IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No.: 1:24-cv-02661-SKC-MDB

BRYAN CLEMENTS,

    Plaintiff,

v.

RAUL ACOSTA, *et al.*,

    Defendants.

---

**ORDER RE: TWO MOTIONS TO DISMISS (DKTS. 33 & 34)**

---

This case is apparently just one litigation in an ongoing family dispute between a sister and brother over the guardianship of their intellectually disabled adult brother (the "Ward"). Dkt. 1, ¶10. Plaintiff Bryan Clements is the long-term partner of Alisa Acosta, the Ward's sister. *Id.*; Dkt. 33, p.4. Defendant Raul Acosta is the Ward's brother and his court-appointed guardian (at least at certain relevant times). Dkt. 33, p.3. Defendant Doris Avila-Hardee is the owner and executive director of the business providing day programs and residential services to the Ward. Dkt. 1, ¶11. And Defendant Jason Hardee is Defendant Avila-Hardee's husband. *Id.* at ¶34.

In this case, Clements sued Defendant Acosta alleging abuse of process because Acosta obtained a state-court temporary civil protection order (CPO) against Clements purportedly for the ulterior motive of blocking a court-ordered visitation by

the Ward to his sister (Clement's partner) in Cody, Wyoming. *Id.* at ¶¶41-52. Plaintiff further alleges all Defendants are liable for civil conspiracy for interfering with the Ward's "court ordered visitation" and "obtaining and serving [the CPO] to undermine or conflict with the order in the [state guardianship case] commanding [the Ward's] visitation to Cody." *Id.* at ¶¶48-54.

Presently before the Court are Defendant Acosta's Motion to Dismiss Plaintiff's Complaint Under Fed. R. Civ. P 12(b)(1) (Acosta MTD) (Dkt. 33) and Defendants Avila-Hardee's and Hardee's Motion to Dismiss Plaintiff's Complaint Under Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(5), and Fed. R. Civ. P. 12(b)(6) (Hardee MTD) (Dkt. 34).[1] Plaintiff filed a consolidated Response (Dkt. 36), and all Defendants filed a consolidated Reply (Dkt. 41). The Court has reviewed all the briefing, the docket, and the relevant law. No hearing is necessary. The Court has jurisdiction purportedly under 28 U.S.C. § 1332.[2]

---

[1] The Hardee MTD purports to seek dismissal of the Complaint under Fed. R. Civ. P. 12(b)(5) for insufficient service of process. Dkt. 34, p.1. But the motion contains no argument explaining any deficiency in service. *See, generally,* Dkt. 34. The Court finds the Rule 12(b)(5) argument is woefully underdeveloped, and therefore, denies any request based on that rule. *See Center for Biological Diversity v. Pizarchik*, 858 F. Supp. 2d 1221, 1230 n. 11 (D. Colo. 2012) (court does not consider "cursory, unsupported, or otherwise inadequately briefed arguments") (citation and internal quotation marks omitted).

[2] The Court has concerns about the alleged amount in controversy, which it addresses in a separate order.

## A. LEGAL PRINCIPLES

### 1.   Rule 12(b)(1)

Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). Under Federal Rule of Civil Procedure 12(b)(1), the court may dismiss a complaint for lack of subject matter jurisdiction. The determination of a court's subject matter jurisdiction is a question of law. *Madsen v. United States ex rel. U.S. Army, Corps of Eng' rs*, 841 F.2d 1011, 1012 (10th Cir. 1987). "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

A motion to dismiss for lack of subject matter jurisdiction may take two forms. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). It may facially attack a complaint's allegations or it may challenge the facts upon which subject matter jurisdiction depends. *Id*. at 1002-1003.

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id*. at 1003 (internal citations omitted); *see also Wheeler v. Hurdman*, 825 F.2d 257,

259 n.5 (10th Cir. 1987). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction . . . ." *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (quoting *Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987)).

### 2. Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

The *Twombly/Iqbal* pleading standard first requires the court to identify

which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In this analysis, courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## B. FACTUAL BACKGROUND

Taking the well-pleaded factual allegations as true for purposes of analyzing the Motions, the Court discerns the following facts relevant to its analysis:

Alisa Acosta (Plaintiff Clement's partner) and Defendant Acosta are litigating in state court over the guardianship of their brother, the Ward ("Guardianship Matter").[3] Dkt. 1, ¶10. The Ward resides in Colorado Springs, Colorado. *Cf. id* at ¶13.

---

[3] All parties appear to agree that the Guardianship Matter and information from it is sensitive. *See, e.g.,* Dkt. 1, p.2 n.1; Dkt. 33, p.3 ("This proceeding is suppressed and only parties who have entered an appearance and are admitted by the Court have access to view it."). But no party has explained to this Court what the parties (or this Court) may discuss or disclose from the Guardianship Matter in light of its suppressed status; the Court hopes the parties have been careful in their filings to

He "receives services through a business ('DSS') that provides day programs and residential services." *Id.* at ¶11. "Defendant Avila-Hardee is the owner and executive director of DSS." *Id.*

"On June 7, 2024, the magistrate judge in the Guardianship Matter ordered [the Ward] to travel to Cody, Wyoming for visitation with [Alisa Acosta] beginning on July 15, 2024." *Id.* at ¶12. Plaintiff Clement "planned to assist with this court-order (sic) visitation to accompany [the Ward] on the plane ride from Colorado Springs to Cody," Wyoming, where Plaintiff and Alisa Acosta live. *Id.* at ¶13.

"On July 10, 2024, DSS filed a Motion to Stay the Court Order that mandated [the Ward's] upcoming visitation." *Id.* at ¶15. But on July 12, 2024, "the Court in the Guardianship Matter denied DSS's Motion and scheduled a hearing for July 15, 2024." *Id.* at ¶23. In parallel, "[o]n July 11, 2024, unbeknownst to Plaintiff Clements, Defendant Acosta filed a Verified Complaint for Civil Protection Order in El Paso County, Colorado, Case Number 24C2411 against Plaintiff Clements ('TPO Action')." *Id.* at ¶16. "As the basis for the TPO, Defendant Acosta claimed [the Ward] was a victim of domestic abuse, stalking, physical assault, and threat." *Id.* at ¶17. "In support of the TPO, Defendant Acosta filed a letter from Defendant Avila-Hardee."

---

not disclose or discuss matters subject to suppression. In any event, the Court addresses this issue in a separate minute order. Unsure of what may be discussed, the Court limits the facts recounted here to only those necessary to determine the issues presently before the Court, perhaps to the detriment of clarity for the public. Nevertheless, the parties are intimately familiar with the history of their disputes.

*Id.* at ¶19. "Defendant Avila-Hardee urged the court to enter a restraining order against Plaintiff Clements to prevent purported 'further harm or danger' to [the Ward]." *Id.* at ¶20. "Defendant Acosta identified the most recent incident causing the need for protection occurred in December 2023—more than seven months before the petition was filed." *Id.* at ¶18. "Neither Defendant Acosta nor Defendant Avila-Hardee even alleged any basis for the TPO occurring after December 2023." *Id.* at ¶20.

The next day, "the Court in the TPO Action issued a Citation and Temporary Civil Protection Order ('CPO') following an ex parte hearing. As is typical in such proceedings, the order was entered without evidence and solely on the basis of the petitioner's allegations." *Id.* at ¶22. "The judicial officer assigned to the TPO Action was different than the judicial officer handling the Guardianship Matter." *Id.* at ¶21.

Meanwhile, the court in the Guardianship Matter held a hearing on July 15, 2024. *Id.* at ¶28. "The Court verbally confirmed [the Ward's] visitation and travel to Cody to proceed that afternoon." *Id.* at ¶31. But "[n]either Defendant Acosta nor Defendant Avila-Hardee advised the court about the [already-issued] CPO against Plaintiff Clements obtained in the TPO Action." *Id.* at ¶30. Further, "[d]uring the hearing, Defendant Avila-Hardee . . . discussed detailed logistics about the court-ordered handoff of [the Ward] to Plaintiff Clements at the airport in Colorado Springs." *Id.* at ¶32.

Later that same day, "Defendant Hardee, the spouse of Defendant Avila-

7

Hardee, served Plaintiff Clements at the Colorado Springs Airport with the CPO Defendant Acosta had obtained using the logistical information obtained during the [Guardianship Matter] hearing by Defendant Avila-Hardee." *Id.* at ¶38. "The CPO was ultimately vacated . . . ," however. *Id.* at ¶40.

### C. ANALYSIS

Defendant Acosta argues only that this Court lacks subject matter jurisdiction over this dispute because (1) the probate exception eliminates federal court jurisdiction, (2) the *Younger* abstention doctrine applies, and (3) Plaintiff Clements' claims are not ripe. *See, generally,* Dkt. 33, pp.9-15. Defendants Avila-Hardee and Hardee similarly contend subject matter jurisdiction lacks because of the probate exception. Dkt. 34, pp.8-11. They also challenge whether Plaintiff Clements has stated a civil conspiracy claim upon which relief may be granted. *Id.* at pp.11-16. The Court disagrees with Defendants and finds no basis for dismissal.[4]

---

[4] Defendants filed a combined Reply that appears to merge their asserted challenges to the Complaint. Dkt. 41. But they cannot raise new arguments in a reply. *See Novosteel Sa v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Reply briefs <u>reply</u> to arguments made in the response brief—they do not provide the moving party a new opportunity to present yet another issue for the court's consideration.") (emphasis in original). The Court, thus, parses their Reply and ignores their respective new arguments raised for the first time.

1.   **Rule 12(b)(1) Challenges**

   a.  **The Probate Exception Does Not Apply**

Plaintiff asserts this Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332. Dkt. 1, ¶¶7-8. All Defendants, however, contend the probate exception divests this Court of that jurisdiction.

The Supreme Court explains the limits of the probate exception:

> the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006). "A case which seeks to reach a *res* in the custody of a state probate court is likewise not cognizable in federal court." *Black v. Black*, No. 22-cv-03098-DDD-NRN, 2023 WL 1989793, at *15 (D. Colo. Feb. 14, 2023) (citing *Marshall*, 547 U.S. 312). "The prohibition against 'endeavoring to dispose of property that is in the custody of a state probate court' is, the Supreme Court has explained, 'essentially a reiteration of the general principle that, when one court is exercising in rem jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*.'" *Id.* (citing *Marshall*, 547 U.S. at 311).

The problem here for Defendants is that Plaintiff's claims—abuse of process and civil conspiracy to commit that abuse of process—are not proceedings *in rem* and do not "involve the administration of an estate, the probate of a will, or any other

9

purely probate matter." *Marshall*, 547 U.S. at 312 (citation omitted). To the contrary, nothing about Plaintiff's claims directly involves the Ward, which is the *res* of the Colorado court.[5] Rather, his claims as stated in the Complaint are that Defendant Acosta went to a state court different from the one hearing the Guardianship Matter to obtain the CPO, and that he did so for an improper purpose. This is an *in personam* claim because Clements seeks liability against Defendant Acosta that does not affect the Ward, *i.e.*, the *res*. *See Marshall*, 547 U.W. at 312 ("Vickie seeks an *in personam* judgment against Pierce, not the probate or annulment of a will."). And "no 'sound policy considerations' militate in favor of extending the probate exception to cover the case at hand," because "[t]rial courts, both federal and state, often address conduct of the kind [Plaintiff] alleges." *Id.* at 312-13 (citation omitted).

For the same reasons, the same holds true for Clements' conspiracy claim against all Defendants. Neither the claim for abuse of process nor the conspiracy claim are subject to the probate exception.

---

[5] The Court decides Defendant's Rule 12(b)(1) challenge without reference to either MTDs' identical exhibits. But even if it were to reference them, the Court's decision here would not change. Additionally, portions of the exhibits undercut Defendants' contention. The state magistrate that presided over the Guardianship Matter apparently spoke with the state magistrate that issued the CPO. Dkt. 33-1, ECF pp.20-21. And the CPO magistrate informed the other that the CPO applied only to Plaintiff Clements and did not affect the Ward's travelling to Wyoming to see his sister. *Id.* at p.21.

### b.  The *Younger* Abstention Doctrine Does Not Apply

Only Defendant Acosta asserts the *Younger* abstention doctrine bars federal jurisdiction. The Court again disagrees.

*Younger* and its progeny guide that the federal courts should "not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). *Younger* abstention applies when:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006) (quoting *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)). The first *Younger* element involves two subparts: the proceedings must be ongoing and the type afforded *Younger* deference. *Hunter v. Hirsig*, 660 F. App'x 711, 715 (10th Cir. 2016). If all three conditions exist, "*Younger* abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Chapman*, 472 F.3d at 749 (quoting *Crown Point I, LLC*, 319 F.3d at 1215).

Here, the CPO matter is closed. The only ongoing matter is the Guardianship Matter, and Plaintiff Clements is not seeking any relief directly affecting it. Rather, he seeks damages for the allegedly wrongful CPO. Moreover, he is not a party to the Guardianship Matter. Thus, Defendant Acosta cannot demonstrate the first element of the *Younger* doctrine is satisfied.

Nor can he establish the presence of the third element because, as explained above, this case is not a guardianship matter; it does not implicate the Ward in any relief sought under either of Clements' claims. The *Younger* doctrine argument fails.

### c. Clements' Claims Are Ripe

Defendant Acosta also makes an underdeveloped argument that, "[u]nless and until there is a Probate Court order or final agency decision confirming it was improper to obtain the protective order," Clement's claims are not ripe. But Acosta fails to explain his reasoning.

To be sure, the CPO wasn't issued by the probate court nor is Clements a party to the probate matter. So Acosta's underdeveloped argument is even further perplexing. On the current record, Clements' claims are ripe and they in no way depend on the unspecified findings of the probate court or some unspecified agency.

### 2. Rule 12(b)(6) Challenge

Defendants Avila-Hardee and Hardee also challenge Plaintiff's conspiracy claim against them under Rule 12(b)(6). They argue Clements fails to allege sufficient

facts to support his abuse of process claim, and thus his conspiracy claim must also fail. Again, the Court disagrees.

"To prove a claim for civil conspiracy, a plaintiff must establish '(1) two or more persons . . . ; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.'" *Rosenblum v. Budd*, 538 P.3d 354, 367 (Colo. App. 2023) (quoting *Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006)). "Civil conspiracy is a derivative cause of action." *Id.* (citing *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 771 P.3d 140, 146 (Colo. App. 2003)).

Defendants Avila-Hardee and Hardee, however, do not direct the Court to any deficient factual allegations required to plausibly allege a conspiracy claim. Rather, they rely on the rule that, "[i]f the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *Id.* (quoting *Double Oak Constr.*, 91 P.3d at 146). And here, the underlying alleged wrong is abuse of process, which requires a plaintiff allege "proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages." *Hewitt v. Rice*, 154 P.3d 408, 414 (Colo. 2007) (citation omitted).

The difficulty for Defendants Avila-Hardee and Hardee is they ignore the allegations in the Complaint concerning the underlying abuse of process claim. They

focus their argument on additional facts and documents from the Guardianship Matter that the Court must ignore on a Fed. R. Civ. P. 12(b)(6) challenge.[6]

As mentioned, "[t]he essence of the tort of abuse of process is the use of a legal proceeding primarily to accomplish a purpose that the proceeding was not designed to achieve." *Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006) (citation omitted). "Establishment of a prima facie case requires not only proof of an ulterior motive but proof of willful actions by the defendant in the use of process which are not proper in the regular conduct of a proceeding." *Id.* (citation omitted).

Here, Plaintiff alleges, "[u]pon information and belief, Defendant Acosta and Defendant Avila-Hardee communicated about seeking a civil protection order against Plaintiff Clements to prevent [the Ward's] court-ordered visitation with [Alisa Acosta] from taking place." Dkt. 1, ¶14. Defendant Acosta then obtained the CPO. *Id.* at ¶¶16-22. The Complaint continues, "Upon information and belief, Defendant Acosta and Defendant Avila-Hardee communicated about a plan to withhold the fact that

---

[6] "A district court may consider documents (1) referenced in a complaint that are (2) central to a plaintiff's claims, and (3) indisputably authentic when resolving a motion to dismiss without converting the motion to one for summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014) (internal citation omitted). Similarly, a court may take judicial notice, including of facts, that are in the public record. *Lucero v. City of Aurora*, , 2025 WL 661639, at *3 (D. Colo. Feb. 28, 2025) (citation omitted). No Defendant makes either argument, however. Further, it is unclear whether any of the documents satisfy the first scenario. And because the Guardianship Matter is apparently suppressed such that the Court cannot even locate it using the case number, those documents are not available publicly. Thus, the Court ignores Defendants' proffered documents for the Fed. R. Civ. P. 12(b)(6) argument.

Defendant Acosta obtained a CPO against Plaintiff Clements from the Court in the Guardianship matter." *Id.* at ¶24. They allegedly communicated how to serve the CPO on Plaintiff Clements. *Id.* at ¶¶25-26. Further, "[u]pon information and belief, Defendant Acosta and Defendant Avila-Hardee decided before the July 15, 2024 [Guardianship Matter] hearing that they would not facilitate [the Ward's] transport to the airport to facilitate the court-ordered handoff to Plaintiff Clements and would instead serve him with the CPO." *Id.* at ¶27. Neither advised the court in the Guardianship Matter that Defendant Acosta had obtained the CPO against Clements, even though the court "verbally confirmed [the Ward's] visitation and travel to Cody to proceed that afternoon." *Id.* at ¶30-31.

And Defendant Hardee, according to the Complaint, agreed to serve Plaintiff Clements with the CPO. *Id.* at ¶35. "Upon information and belief, Defendant Hardee was aware that the CPO was obtained for the purpose of preventing [the Ward's] visitation to Cody." *Id.* at ¶37. He also "learned through communications with Defendant Hardee-Avila and/or Defendant Acosta that Plaintiff Clements would be expecting to pick up [the Ward] at a specific time and location and would not be expecting to be served with the CPO." *Id.* at ¶36.

The allegations that Defendants Acosta and Avila-Hardee communicated about obtaining a CPO in order to prevent the Ward's court-ordered visitation with his sister, and Defendant Hardee's alleged knowledge of this purpose, are sufficient

15

facts to plausibly allege a wrongful use of legal proceedings to obtain the CPO.[7] *See* Colo. Rev. Stat. §13-14-104.5(1)(a) (statutory authorized purposes for a temporary CPO are to prevent assaults and threatened bodily harm, domestic abuse, emotional abuse of the elderly or of an at-risk adult, sexual violence, and stalking). The Court thus finds Plaintiff has sufficiently alleged his conspiracy claim against Defendants Avila-Hardee and Hardee.[8]

\*   \*   \*

For the reasons shared above, the Court ORDERS both Motions to Dismiss

---

[7] While the Complaint's allegation that Defendant Avila-Hardee wrote a letter "urg[ing] the court to enter a restraining order against Plaintiff Clements to prevent purported 'further harm or danger' to [the Ward]" (Dkt. 1, ¶20), suggests a legitimate use of the CPO process, at this motion to dismiss stage where the Court must take all allegations in the light most favorable to the plaintiff, the Court finds this allegation does not outweigh Plaintiff's other allegations. *Casanova*, 595 F.3d at 1124-25. Defendants Avila-Hardee and Hardee also argue that service of process in a public location is legally protected by statute. Dkt. 34, p.16. That's true. But they miss the point of Clement's claim—that the service of process was completed in furtherance of an improper use of the civil protective order statute.

[8] Plaintiffs Avilla-Hardee and Hardee also argue that the Guardianship Matter court's order was of no legal effect because it no longer had jurisdiction over the dispute. Dkt. 41, pp.3-8. But they did not raise this argument in their MTD. Thus, it is waived. But even giving it cursory attention, the Court is not persuaded. It appears that, at the time of the events in question, none of the parties recognized the possibility that the Guardianship Matter court may have lost jurisdiction over that matter. They were operating under the assumption that the Guardianship Matter court's order that the Ward travel to Wyoming to see his sister was, in fact, controlling. Thus, according to the Complaint, their alleged conspiracy was in furtherance of a wrongful use of the CPO statute.

(Dkts. 33 & 34) are DENIED.

DATED: September 5, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge